**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| CEDRICK MHOON, | ) | |
| ADC #108920 | ) | |
|     Plaintiff, | ) | **Case No. 4:11-CV-00253 JTK** |
| | ) | |
| v. | ) | |
| | ) | |
| JEREMY DISOTELL, Patrolman, | ) | |
| Conway Police Department | ) | |
| | ) | |
| BRIAN A. BUSBY, Patrolman, | ) | |
| Conway Police Department | ) | |
| | ) | |
| T. G. COOPER, Patrolman, | ) | |
| Conway Police Department | ) | |
| | ) | |
| (all Defendants have been sued in both | ) | |
| official and individual capacities) | ) | |
|     Defendants. | | |

<u>**ORDER**</u>

    BEFORE THE COURT is Defendants' Motion for Summary Judgment (Doc. No. 40). Both parties have submitted briefs, and the case is ready for decision.[1]  The Court finds that Defendants' motion should be granted and that the case should be dismissed with prejudice.

**Background**

    Viewing the record in the light most favorably to Plaintiff, the non-moving party, the facts are as follows.  On March 17, 2008, Plaintiff was high on cocaine and standing in the middle of traffic attempting to stop and enter passing cars in Conway, Arkansas.  He was screaming that he needed a ride because his brother-in-law was chasing him and trying to kill

---

[1] The parties have consented to the jurisdiction of a Magistrate Judge.  (DE #47).

him.  His actions led four different people to call 911, and three of them indicated that he had been on top of and fallen off of a car or cars.  Plaintiff maintains that he never fell off of a car and that he was merely struck on the hip by a car, which caused him to fall to his knee.

The fourth 911 call described Plaintiff obtaining entry into a woman's Ford Explorer. This woman, who was later identified as Cynthia Sygrist, drove Plaintiff towards the police station until he grabbed the steering wheel and jerked it.  She then parked in a nearby bank parking lot before demanding he exit the car.  Sygrist eventually exited the car herself, and Defendant Busby was the first officer to arrive on the scene.  Sygrist identified Plaintiff as the man who entered her car, and both Sygrist and Busby said that Plaintiff was already bleeding when Officer Busby arrived.

Both parties appear to agree[2] that Plaintiff was asking for help and that he attempted to enter Officer Busby's police car when Busby got to the scene.  However, Officer Busby grabbed Plaintiff by the wrist and restrained him because there was ammunition, supplies, and a knife in the backseat of his patrol vehicle.  Plaintiff maintains that he was pushed to the ground after Officer Busby grabbed his arm and that his arm was painfully pushed up while he was on the ground by Defendant Officer Disotell, who arrived just as Officer Busby began restraining Plaintiff.  The officers have testified that Plaintiff was refusing to comply with their orders and that he was physically resisting; Plaintiff denies resisting.  A tow truck driver that happened to be passing by apparently noticed the officers' difficulty restraining Plaintiff and stopped to assist the officers place handcuffs on him.  Defendant Sergeant Cooper arrived on the scene just as the two officers were picking Plaintiff up off of the ground.  Although not mentioned in his

---

[2] Pl.'s Compl. at 7, Doc. No. 2; Def.'s Mot. Sum. Judg. at 3, Doc. No. 40.

complaint, Plaintiff's response alleges that the officers used their sticks on him while he was on the ground.  However, medical records from the following day, March 18, 2008, indicate that Plaintiff told doctors that he had been hit with a stick by his brother-in-law.  Plaintiff's response alleges that he told his doctor that the police hit him with a stick.

The officers contacted the Conway Fire Department and emergency medical personnel (MEMS) to check on Plaintiff's injuries when he arrived at the Conway Police Department. MEMS determined that Plaintiff was stable, but that he should receive further treatment for his injuries.  Plaintiff signed a waiver of medical treatment and declined to accompany MEMS to the hospital.  He alleges that he refused transport because he planned to transport himself.

After he was placed in custody, Plaintiff admitted to being under the influence of cocaine and repeatedly referred to a murder that had taken place the night before in North Little Rock. The North Little Rock Police Department was contacted, and an interview was conducted. Plaintiff was released into NLRPD custody after it established felony murder charges.

While in the care of the Pulaski County Detention Center, Plaintiff requested to be taken to the hospital because of pain in his right elbow.  The March 18, 2008 examination revealed a fracture to Plaintiff's elbow, and he was given a sling and instructed to take Advil and Tylenol for pain.  Plaintiff admits that he was moving his arms around freely during his interview at the Conway police station, but he explains that this was only because the cocaine numbed his pain.

## Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party demonstrates that

there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute that must be resolved at trial. *Id.* Importantly, when considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). Additionally, the evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

"The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

### Discussion

Plaintiff alleges Defendants used excessive force and that they were deliberately indifferent to his medical needs. His suit has been brought pursuant to 42. U.S.C. § 1983, and he seeks 1) a declaration that Defendants violated his constitutional rights; 2) a preliminary and permanent injunction ordering defendants to cease all use of any and all electrical devices; 3) freezing of all bank accounts, assets, and equity; 4) compensatory and punitive damages; 5) litigation costs; and 6) the cost of two gold teeth that were damaged during the incident. Defendants' motion contends that Plaintiff's claims fail as a matter of both fact and law.

### A.  Excessive Force Claims

Plaintiff's excessive force claims are without merit, but they are particularly so with respect to Defendant T. G. Cooper.  Unlike the other two defendants, Plaintiff does not offer any allegations of excessive force by Cooper or even dispute that Cooper arrived on the scene after the alleged beating took place.  Furthermore, it appears that Plaintiff has actually requested that Cooper be removed from this suit and that his request has gone unnoticed until now. Pl.'s Ans. Interr. At 6, Doc. No. 19.  The Court hereby grants that relief, and Cooper is dismissed as a defendant.

Officers Busby and Disotell are immune from suit. "To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). Courts are free to address either question first. *Pearson v. Callahan*, 555 U.S. 223 (2009). Plaintiff has failed to present sufficient facts to show that a constitutional right was violated, and the officers' actions were reasonable under the circumstances.  Further, even if a constitutional right was established, it was not one that was clearly established at the time.

 "The force employed by an officer is not excessive and thus not violative of the Fourth Amendment if it was 'objectively reasonable under the particular circumstances.'" *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Foster v. Metro. Airports Com'n*, 914 F.2d 1076, 1081 (8th Cir. 1990).

Plaintiff appears to concede that he was standing in the middle of traffic and trying to stop and enter passing cars. Pl.'s Resp. at 2, Doc. No. 46. He was in a very excited state from being chased by his brother-in-law and admits to being under the influence of cocaine. Finally, he also admits to trying to enter the police car. *Id.* at 6 ("But I was trying to get into the car."); Pl.'s Compl. At 7, Doc. No. 2 ("I was about to get into the police car when the officer grabbed my arm and put me on the ground."). Plaintiff is silent regarding the four separate 911 calls his behavior caused and the danger his actions placed Sygrist in. Although the parties disagree regarding the details and implications of Plaintiff's comments during these events, they agree that he was talking about a murder that had taken place the previous day in North Little Rock.[3]

Given the circumstances and Busby's testimony that he had weapons in the backseat of his patrol car, it was objectively reasonable for Busby to take Plaintiff to the ground. Even if there were not weapons in the back of his car, it would be reasonable for an officer to be alarmed when a person attempts uninvited entry into their patrol vehicle and to subdue said person. The circumstances more than justify the amount of force that the officers used here.

---

[3] Plaintiff alleges that he calmly told police that he was fleeing from his brother because Plaintiff wanted to turn him in for murder. Sygrist's and the officers' accounts indicate Plaintiff repeatedly yelled things along the line of "I didn't kill that motherfucker in North Little Rock, my brother did!"

Assuming Plaintiff's new allegation that the officers used their nightsticks on him is true, the Court still does not believe the officers' actions were unreasonable. Plaintiff admits that he was yelling "your [sic] hurting my arm. Let it go!" Pl.'s Resp. at 3, Doc. No. 46. Although Plaintiff does not remember a truck driver stopping to assist the two officers, he does not deny that it happened. Given the fact that a random passerby felt it necessary to help the officers subdue Plaintiff and Plaintiff's objections to the officers' attempts to handcuff him, the Court does not believe that the officers' alleged use of their nightsticks was objectively unreasonable. Nor is there is any indication that they used them in an excessive manner.

"In addition to the circumstances surrounding the use of force, we may also consider the result of the force." *Crumley*, 324 F.3d at 1007. Other than a fracture in his arm, there does not appear to be any significant injuries that could have resulted from the savage beating Plaintiff has vaguely described. Several civilian witnesses and Busby reported that Plaintiff was already bleeding before he had any contact with the officers, and multiple witnesses indicated they saw Plaintiff falling off of a car in traffic. Plaintiff also refused transportation to the hospital after the events took place. Although Plaintiff disputes the severity of the force and manner with which he was struck by the car, he does not dispute that he was bleeding or had injuries before meeting Defendants. He has not offered any evidence that his arm injury was the result of the officers' actions, and the medical records contradict this new speculation.[4]

---

[4] On March 18, 2008, Plaintiff told the doctor that he fell and that his brother-in-law hit him with a stick. He had an abrasion to his face and left forearm, and his main complaint was right elbow pain. Def.'s SUMF, Ex. L, Doc No. 42. During a follow-up visit six months later, Plaintiff told a different doctor that he fractured his elbow due to a fall from a vehicle in March 2008. *Id.* at Ex. M.

Even if the Court were to assume that Disotell and Busby's conduct was unreasonable under the circumstances, the doctrine of qualified immunity protects them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he state of the law in [May 2008] was such that a reasonable officer could have believed that as long as he did not cause more than de minimis injury to an arrestee, he would not violate the Fourth Amendment." *Hemphill v. Hale*, 677 F.3d 799, 801 (8th Cir. 2012) (discussing state of law prior to the Eighth Circuit's decision in *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011)).

There is no evidence that the officers used anything more than de minimis force here. Plaintiff never mentioned the police as a possible cause of injury to his doctors, both doctors' records indicate that he attributed the injury to other sources, his complaint does not even allege the officers broke his arm (this is implied for the first time in his response), and he seems to rely entirely on the fact that Defendants cannot prove they didn't break his arm. *See* Pl.'s Resp. at 3. This is plainly insufficient. Accordingly, the Court finds that the individual defendants are immune from suit and that Plaintiff's claims are without merit.

Defendants have also been sued in their official capacity, and "[a] suit against a governmental employee in his official capacity is treated as a suit against the municipality he serves." *Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005). It is well established that a municipality cannot be held vicariously liable under 42 U.S.C. § 1983 for its employees' unconstitutional acts. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). "When a municipal policy or custom is the moving force behind a constitutional violation, however,

municipal liability attaches." *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991). "Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom." *Id.*

As discussed above, the Court finds that no constitutional violation took place. Further, Plaintiff has failed to even allege that any policy or custom was the cause of his allegations. Accordingly, his excessive force claims against the officers in their official capacities are meritless, and the city is immune from suit.

**B.  Deliberate Indifference**

To succeed on his claim of deliberate indifference, Plaintiff must "demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). He has failed to meet either of these burdens.

"To constitute an objectively serious medical need or a deprivation of that need, . . . the need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). It does not appear that Plaintiff ever suffered from a serious medical condition that required more attention than what Defendants provided. Defendants ensured Plaintiff received medical attention as soon as he arrived at the police department, and Plaintiff even signed a waiver refusing transport to the hospital after he received minor treatment. Defendants also note that Plaintiff was very animated and was waving his arms around during his police interview. Thus, it would not have been obvious that Plaintiff had a fractured elbow.

The second element "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). "[T]here must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).  Plaintiff has done nothing to address this element other than contend that Busby and Disotell should have known that Plaintiff was only able to wave his arms around because he was under the influence of cocaine.  This speculation is insufficient, and Plaintiff has failed to establish either element of his claim.  Accordingly, Defendants are immune from suit based on Plaintiff's meritless deliberate indifference claims in both their individual and official capacities.

IT IS THEREFORE ORDERED that Plaintiff's action be, and it is hereby, dismissed, with prejudice.  The relief prayed for is DENIED.

SO ORDERED this 5th day of December, 2013.

_____
United States Magistrate Judge